In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2044

Patrick W. Donahue,

Plaintiff-Appellant,

v.

Jo Anne B. Barnhart, Commissioner of Social
Security,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-C-1507--Thomas J. Curran, Judge.

Argued November 14, 2001--Decided January 25, 2002

   Before Coffey, Easterbrook, and Diane P.
Wood, Circuit Judges.

   Easterbrook, Circuit Judge.  Patrick
Donahue, who last was employed (as a
truck driver) in 1986, seeks an award of
supplemental security income on the basis
of disability. The substantive standards
for supplemental security income are
materially the same as those for Social
Security disability benefits, though the
monthly payment is lower. Donahue had a
laminectomy in 1977 and continues to
suffer back pain. He is illiterate and
suffers from some personality problems as
a result of organic brain damage. But
after hearing the testimony of a
vocational expert, the administrative law
judge concluded that Donahue could
perform low-stress tasks with moderate
exertional requirements, such as
janitorial work, and therefore is not
disabled--for supplemental security
income is not a form of unemployment
insurance and is unavailable if any do-
able work exists in the national economy,
even if other persons with better skills
are likely to be hired instead. The
district court concluded that substantial
evidence supports the administrative
conclusion.

   Donahue's lead argument is that the alj
improperly discounted his contention that

back pain hampers his ability to work. It is not clear to us that the alj's credibility finding made any difference. Donahue's own estimate is that his pain reaches a level of 3 on a scale of 0 to 10, and this does not sound disabling. What the alj found is not that the pain should have been rated a 2, but that it is not bad enough to prevent Donahue from performing jobs such as janitor. In making this determination the alj did not limit herself to an observation that the severity of pain cannot be demonstrated by objective medical evidence. If the alj had made such a finding, it would have been a legal error, for both regulations and interpretive guides provide that the agency will consider all evidence. See 20 C.F.R. sec.416.929(c)(2); Social Security Ruling 96-7p; Zurawski v. Halter, 245 F.3d 881, 887-88 (7th Cir. 2001). What the alj actually did, however, is compatible with all legal requirements. The alj observed that Donahue continued working for a decade after his back operation (and was fired for refusing to participate in counseling, a reason unrelated to back pain), implying that the pain could not be disabling unless things had gotten worse since 1986. Then the alj noted that Donahue relied for pain control on over-the-counter analgesics and reported that these gave him good relief, from which the alj inferred that the level of pain could not be severe. A physician concluded that Donahue can lift 50 pounds and stand for 6 hours in an 8-hour period, which again implies that the level of pain he must endure is not disabling. There was more; but what we have recited supplies substantial evidence for the alj's decision. Donahue puts a different spin on the evidence; he contends, for example, that he settled for over-the-counter analgesics because an unnamed physician once told him that there was not much else to do. At oral argument his lawyer stated that Donahue could not afford more powerful pain-killers, a position never communicated to the alj. In either event the fact remains that he reported good pain control with what he used, and the resolution of competing arguments based on the record is for the alj, not the court. See, e.g., Brewer v. Chater, 103 F.3d 1384, 1392 (7th Cir. 1997); Stephens v. Heckler, 766 F.2d 284 (7th Cir. 1985).

   Asked what jobs could be performed by an

illiterate person who has some back pain and difficulty interacting with others, can lift 25 pounds frequently and 50 pounds occasionally, and can stand or walk for 6 hours during a working day but needs to sit when back pain and dizzy spells occur, the vocational expert replied that the Milwaukee area alone offers some 5,000 janitorial jobs, 3,000 assembly jobs, and 1,500 hand-packing jobs that satisfy these limitations. The alj accepted this testimony, which doomed Donahue's application. He now raises two objections: first, that the alj did not include in the list of problems his personality disorder and shortcomings in concentration; second that the alj contradicted the Department of Labor's Dictionary of Occupational Titles (4th ed. 1991), when testifying that an illiterate person could perform these jobs. The first of these contentions seems to us picayune. The alj specified that Donahue had difficulty interacting with others and would need to sit, on his own schedule, to accommodate back pain and dizziness. The vocational expert did not name jobs in which steady concentration or sociability is essential. Donahue does not contend that he has deteriorated in these respects since the years he worked as a truck driver; it is only because of his testimony about dizzy spells that the alj concluded that he could not return to his former occupation, and the dizziness limitation was stated for the vocational expert's consideration.

The conflict between the vocational expert's testimony and the Dictionary of Occupational Titles is not so easy to deal with. It turns out that whoever wrote the Dictionary believes that basic literacy (defined as a vocabulary of 2,500 words, the ability to read about 100 words a minute, and the ability to print simple sentences) is essential for every job in the economy, and that janitors require a higher level (the ability to read about 200 words per minute). See Dictionary at classifications 382, 358.687-010, 381.687-014, 381.687-018, 382.664-101 (discussing various janitorial classifications), and Appendix C pp. 1010-11 (literacy for all jobs). The vocational expert obviously did not agree--nor did Donahue's former employer, for he was no more literate during the 23

years he drove a garbage truck than he is today. Illiteracy is not a progressive disease.

Courts disagree about the appropriate interaction between the Dictionary and a vocational expert. The eighth circuit held at one point that an alj always must prefer the Dictionary over the view of a vocational expert. See Smith v. Shalala, 46 F.3d 45, 47 (8th Cir. 1994). If this is so, then Donahue (and every other illiterate person in the United States) must be deemed "disabled," even though illiteracy is not a listed impairment leading to an automatic finding of disability under the Commissioner's regulations. On the other hand, three circuits hold that an alj always may pre fer the testimony of a vocational expert over the conclusions in the Dictionary. See Jones v. Apfel, 190 F.3d 1224 (11th Cir. 1999); Conn v. Secretary of Health and Human Services, 51 F.3d 607 (6th Cir. 1995); Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000). Three more circuits allow the alj to accept a vocational expert's position, but only after providing an explanation (with record support) for doing this; in these circuits a vocational expert's bare conclusion is not enough. See Haddock v. Apfel, 196 F.3d 1084 (10th Cir. 1999); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Mimms v. Heckler, 750 F.2d 180 (2d Cir. 1984). We have yet to face the issue squarely, on occasion remanding for a better explanation and on occasion affirming, but never articulating a rule of decision for cases of this kind. Compare Young v. Secretary of Health and Human Services, 957 F.2d 386, 392-93 (7th Cir. 1992), and Tom v. Heckler, 779 F.2d 1250, 1255-56 (7th Cir. 1985) (both remanding), with Powers v. Apfel, 207 F.3d 431, 436-37 (7th Cir. 2000) (permitting a hearing officer to rely on expert testimony that contradicts the Dictionary).

The position articulated in Smith that the Dictionary always wins is untenable. Smith itself gave no reason for a flat rule, and the eighth circuit sensibly has retreated in more recent cases. See Young v. Apfel, 221 F.3d 1065 (8th Cir. 2000); Jones v. Chater, 72 F.3d 91 (8th Cir. 1995); Montgomery v. Chater, 69 F.3d 273 (8th Cir. 1995). Smith would make the Dictionary of Occupational Titles

anindependent source of listed impairments, giving the Dictionary's team of authors a power that Congress has bestowed on the Commissioner of Social Security. The editorial board of the Dictionary has not been nominated by the President or confirmed by the Senate. The Dictionary is published by the Department of Labor as a tool; it does not purport to contain rules of law, and no statute or regulation gives it binding force. The Commissioner of Social Security is entitled to examine independently those questions covered by the Dictionary-- something that the Dictionary itself proclaims when observing that users should rely on better data if they have any in their own possession. See Dictionary at xiii. To go by the record of this case (and many others), that caution is prudent. Donahue had a job for a long time despite his poor reading skills. (One wonders how Donahue can be "illiterate" if he could take and pass the tests required of truck drivers, but the parties make nothing of this.) Indeed, people who arrive in the United States without even the ability to recognize the Latin alphabet often find work. So the alj must be entitled to accept testimony of a vocational expert whose experience and knowledge in a given situation exceeds that of the Dictionary's authors. But when will this be true? We asked the parties at oral argument what makes a vocational expert an "expert" (and where the information in the Dictionary came from). They did not know. Maybe both the authors of the Dictionary and the vocational expert in this case are talking out of a hat.

Rule 702 of the Federal Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." This substantially codifies the holdings of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its successors. Rule 702 does not apply to disability adjudications, a hybrid between the adversarial and the

inquisitorial models. See Richardson v. Perales, 402 U.S. 389 (1971). But the idea that experts should use reliable methods does not depend on Rule 702 alone, and it plays a role in the administrative process because every decision must be supported by substantial evidence. Evidence is not "substantial" if vital testimony has been conjured out of whole cloth. See Peabody Coal Co. v. McCandless, 255 F.3d 465 (7th Cir. 2001); Elliott v. CFTC, 202 F.3d 926 (7th Cir. 2000). Even in court, however, an expert is free to give a bottom line, provided that the underlying data and reasoning are available on demand. Fed. R. Evid. 704(a). That's what the vocational expert did here. Presented with a statement of Donahue's abilities and limitations, the vocational expert produced some job titles and numbers. At this point the expert could have been cross-examined (Donahue was represented by counsel) about where these numbers came from, and why the expert's conclusion did not match the Dictionary's. Holding out this opportunity is an approach deemed adequate in Richardson v. Perales. Yet counsel did not ask the vocational expert about the genesis of the numbers or the reason for the discrepancy.

What, then, happens when the discrepancy is unexplored? When no one questions the vocational expert's foundation or reasoning, an alj is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the Dictionary's--for the Dictionary, after all, just records other unexplained conclusions and is not even subject to cross-examination. If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the alj should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the pur ported expert's conclusions are reliable. Social Security Ruling 00-4p, promulgated in December 2000 (and thus not directly applicable to this case), is to much the same effect. This ruling requires the alj to "[e]xplain [in the] determination or decision how any conflict [with the Dictionary] that has been identified was resolved." (Emphasis added.) The ruling requires an explanation only if the discrepancy was "identified"--that is, if the claimant (or the alj on his behalf) noticed the conflict and asked for

substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late. An alj is not obliged to reopen the record. On the record as it stands--that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning--the alj was entitled to reach the conclusion she did.

Affirmed