In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2287

FESTUS M. MCKINNIE,

*Plaintiff-Appellant*,

*v.*

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 00 C 521—**Andrew P. Rodovich**, *Magistrate Judge*.

ARGUED APRIL 22, 2003—DECIDED MAY 1, 2003
OPINION PUBLISHED MAY 24, 2004[1]

Before COFFEY, RIPPLE, and EVANS, *Circuit Judges*.

PER CURIAM. Festus McKinnie applied for Supplemental Security Income and Disability Insurance Benefits, claiming that a work-related knee injury rendered him disabled from January 17, 1992, to August 31, 1995. An administrative law judge (ALJ), after a hearing, found McKinnie not disabled, and the district court upheld the ALJ's ruling. McKinnie appeals.

---

[1] Pursuant to Circuit Rule 53, this opinion was originally issued as an unpublished order on May 1, 2003. The court, upon request, now issues this decision as a published opinion.

McKinnie began working as a grinder and X-ray techni-
cian for Union Tank Car Company in September 1988. In
February 1990, he injured his knee at work and required
arthroscopic surgery. The severity of his pain eventually
forced McKinnie to quit his job on January 17, 1992. Sub-
sequently, two doctors—Dr. Richard Oni of the Spine and
Scoliosis Center of Indiana and Dr. Robert Martino, an
orthopedic surgeon—diagnosed McKinnie with a torn
medial meniscus and internal derangement of the right
knee. Dr. Martino opined that McKinnie suffered "a par-
tial permanent impairment of 35% of [his] right leg as a
whole."

In November 1993, McKinnie applied for disability
benefits, alleging that severe pain in his knee and limited
mobility precluded him from working as of January 17,
1992. Subsequently, McKinnie was examined by Dr.
Herbert White, a consultative examiner for the Social
Security Administration. Dr. White found no anatomic
abnormalities but noted swelling, "questionable effusion,"
and "severe tenderness" in the right knee. He further
noted that McKinnie could hop on his left leg but not
his right and could squat only with severe difficulty, but
that he had no difficulty getting on and off the examina-
tion table and walked without an assistive device.

After protracted litigation, McKinnie was found dis-
abled as of August 31, 1995, when he suffered another leg
injury, rupturing his Achilles tendon. McKinnie requested
a hearing and argued before an ALJ that his disability
began on January 17, 1992, not August 31, 1995.

The ALJ heard testimony from McKinnie and vocational
expert Julie Bose. McKinnie told the court that he suf-
fered depression and that he felt severe pain if he stood
more than 5 minutes, sat more than 15 or 20 minutes, or
walked more than half a block with his cane.

After hearing McKinnie's testimony, the ALJ asked Bose
several hypothetical questions, all of which assumed an

individual of McKinnie's age, having the same education and work experience, and who was limited to sedentary work requiring little concentration. Bose responded that either a complete inability to stoop or bend or an absolute restriction on standing and walking would rule out all unskilled sedentary work. But, according to Bose, if the hypothetical individual could occasionally stand, walk, and bend, he could work as a telephone quotation clerk, a telephone marketing clerk, or a bench sorter. Bose told the ALJ that 1,000 to 1,200 telephone quotation clerk jobs, 6,000 to 6,500 telemarketing jobs, and 3,000 to 3,500 bench sorter jobs existed in the regional economy.

On cross-examination, McKinnie's attorney challenged the foundation of Bose's testimony, asking her to "show us how you arrived at [your] figure[s]." Bose responded that she determined the numbers of jobs available for each occupation by referring to "regular market studies, Department of Labor Statistics, and Census Bureaus . . . in combination, to include my personal labor market surveys in extrapolating the numbers." Bose had not prepared a written report for the hearing, nor did she have any reference materials with her. When McKinnie's attorney asked her how she performed this extrapolation, Bose responded, "Based on our knowledge of the vocational expert and every day labor market surveys that we do," but she could provide no data or citations for the references she relied upon in forming her opinion. The ALJ told McKinnie's attorney that he could ask Bose to supplement the record with the data and references that she had relied upon, but only if McKinnie compensated Bose for her time. The ALJ left the record open at the close of the hearing, but McKinnie never requested a written report from Bose.

After considering the hearing testimony and the rest of the materials in the record, the ALJ found that McKinnie was not disabled prior to August 31, 1995. In reaching this

conclusion, the ALJ applied the familiar five-step analysis outlined in 20 C.F.R. §§ 404.1572 and 416.972. After making the requisite findings at Steps 1, 2, and 3, the ALJ proceeded to Step 4 to determine McKinnie's residual functional capacity to work (RFC). The ALJ concluded that, after January 17, 1992, McKinnie could not perform his past relevant work. But the ALJ further found that he did have the RFC to perform sedentary work requiring no more than occasional standing, walking, or bending. Proceeding to Step 5, the ALJ relied on Bose's testimony to conclude that, during the relevant time period, McKinnie could perform a significant number of jobs in the regional economy. Accordingly, the ALJ denied McKinnie's request for benefits between January 17, 1992, and August 31, 1995. The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration.

McKinnie sought review in district court, claiming that the ALJ's decision was not supported by substantial evidence. The parties consented to the entry of a final judgment by a magistrate judge, who ultimately decided the case in favor of the Commissioner.

We will affirm the findings of an ALJ as long as they are supported by substantial evidence. *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). Substantial evidence is evidence sufficient to convince a reasonable person that the ALJ's findings are adequate. *Id.* The ALJ need not address every single piece of evidence in his decision, *id.*, but his analysis must build an accurate and logical bridge between the evidence and his findings, *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

McKinnie challenges the ALJ's findings at Step 4 and Step 5 that he had the RFC to perform a significant number of jobs in the regional economy from January 17, 1992, to August 31, 1995. First McKinnie argues that the ALJ

disregarded medical evidence in the record when he found at Step 4 that McKinnie could occasionally bend or stoop. As McKinnie points out, Dr. Martino advised him to avoid work requiring walking, standing, or bending. But Dr. Martino also determined that McKinnie's right leg was only 35 percent impaired. Furthermore, Dr. Oni noted that McKinnie was able to move his knee through the full range of active and passive motion, and Dr. White observed that McKinnie got on and off an examination table without difficulty, walked without an assistive device, and could hop on his left leg. Taken together, these medical findings supported the ALJ's determination that McKinnie could perform sedentary work involving only occasional bending.

McKinnie, however, also challenges the reliability of the expert testimony given at his hearing. He contends that the ALJ erred in relying on Bose's testimony without first ascertaining that she had an adequate foundation for her opinions. This argument has merit.

We have recognized that the standards by which an expert's reliability is measured may be less stringent at an administrative hearing than under the Federal Rules of Evidence. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Nevertheless, because an ALJ's findings must be supported by substantial evidence, an ALJ may depend upon expert testimony only if the testimony is reliable. *Id.* ("Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth."); *see also Consol. Coal Co. v. Stein*, 294 F.3d 885, 893 (7th Cir. 2002) (parties to an administrative proceeding must salsify the ALJ that their experts are qualified). A vocational expert is "free to give a bottom line," but the data and reasoning underlying that bottom line must be "available on demand" if the claimant challenges the foundation of the vocational expert's opinions. *Donahue*, 279 F.3d at 446. "If the basis of the vocational expert's conclusions is questioned at the

hearing . . . then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable." *Id.*

At the hearing, McKinnie contested the reliability of Bose's conclusions that an individual with McKinnie's impairments could perform 1,000 to 1,200 telephone quotation clerk jobs, 6,000 to 6,500 telemarketing jobs, and 3,000 to 3,500 bench sorter jobs in the regional economy. Bose did not substantiate her findings with a written report or other documentation to substantiate her figures, and her vague responses to McKinnie's questioning were insufficient to establish a foundation for her testimony. But the ALJ did not inquire into the reliability of her conclusions as he was required to do. *Donahue*, 279 F.3d at 446. Moreover, when McKinnie's attorney requested that Bose supplement the record with documentation of her research, both the ALJ and Bose insisted that McKinnie pay for the preparation of these materials.

It is the Commissioner's burden at Step 5 to establish the existence of a significant number of jobs that the claimant can perform. *See Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). The claimant should not have to pay to substantiate the expert testimony relied upon by the Commissioner in seeking to meet the Step 5 burden. Presumably a vocational expert establishes the foundation for her opinions before she expresses them at a hearing. It is not apparent why a claimant should pay a vocational expert to do the preparatory research that she should have completed prior to testifying. The data and reasoning underlying a vocational expert's opinions are not "available on demand" if the claimant must pay for them. *See Donahue*, 279 F.3d at 446.

Without first inquiring into the reliability of Bose's opinions, the ALJ should not have so unquestioningly accepted her testimony that a significant number of jobs

were available to McKinnie. For that reason, we vacate the ALJ's decision at Step 5 and remand so that he can undertake this inquiry. We emphasize, however, that we remand only for the purpose of determining whether McKinnie could perform a significant number of jobs in the regional economy between January 17, 1992, and August 31, 1995. Without question, the ALJ's determination of McKinnie's RFC at Step 4 was supported by substantial evidence. The case is VACATED and REMANDED for further proceedings consistent with this order.

A true Copy:

      Teste:

                                 _____

                                 *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*