In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 05-3218

NANCY PROCHASKA,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART, Commissioner
of Social Security,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-C-0644-C—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED MAY 9, 2006—DECIDED JULY 24, 2006

———————

Before CUDAHY, KANNE, and WOOD, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Nancy Prochaska appeals the
denial of her application for supplemental security in-
come and disability insurance benefits. She contends that
the Administrative Law Judge's ruling that she is not
disabled was flawed for both procedural and substantive
reasons. Because the ALJ failed to explore inconsistencies
between the vocational expert's testimony and the Dic-
tionary of Occupational Titles, as required by Social
Security Ruling 00-4p, we vacate and remand this case for
further proceedings.

## I. Background

Prochaska spent her last 13 years of employment working for two different employers manufacturing window casements. Her employment ended after she aggravated an existing back injury in 2000. She saw a number of physicians with respect to her condition, which was diagnosed as "degenerative disc disease" accompanied by acute pain. One of these physicians was her family doctor, Dr. Michael Cragg. His notes show that she complained of pain in her back radiating to her right leg, but that even though she suffered from "moderate obesity" her gait and the range of motion in her extremities and head were normal. He also reported that Prochaska had a history of "panic attacks and depression," but that she was "doing quite well" and that the attacks were "just fine as long as she stays on the [anti-depressant medication] Paxil." Prochaska received a second opinion as to her mental health in May 2001 from psychologist Dr. Jean Warrior. Warrior's diagnosis was that Prochaska suffered from "no medically determinable mental impairment," and she found no degree of limitation in Prochaska's daily activities, social functioning or concentration.

Dr. Cragg's final medical evaluation of Prochaska was that she could sit, stand and walk for four hours each but that she was incapable of stooping, squatting, crawling or climbing. He reported that she could only occasionally crouch, kneel, balance, push or pull. She could, he determined, occasionally carry up to 10 pounds and lift up to 24 pounds. He wrote that she could make repetitive movements with her right foot, but not her left, and that both hands were capable of repetitive motions.

Prochaska had an administrative hearing in December 2001, and in March 2002 the ALJ denied her benefits. Applying the five-step analysis used to evaluate disability, *see* 20 C.F.R. § 404.1520(a)-(g), the ALJ found that: (1)

Prochaska had not performed substantial work since the alleged onset of the disability; (2) her impairments were severe under the regulations; (3) the medically determinable impairments did not equal a listed impairment; (4) she was unable to perform any of her past work; and (5) she was "able to perform work existing in significant numbers in the national economy," such as "cashier, assembly, packaging, and assembly" jobs.

The ALJ also found that Prochaska's "allegations regarding her limitations are not totally credible." He based that finding on his determination that Prochaska's testimony that "she cooks, cleans house, reads, and attends to personal grooming on a daily basis" and "drives, shops, visits relatives and friends on a weekly basis" was "inconsistent with her allegation of disability." The ALJ also noted that Prochaska's worker's compensation claim had been denied because "she had deliberately falsified an employment application."

The Appeals Council declined to review the ALJ's ruling, and Prochaska filed suit in district court seeking review under 42 U.S.C. § 405(g). The district judge, adopting the recommendation of a magistrate judge, affirmed the Commissioner's decision to deny Prochaska benefits.

## II. Discussion

Because the appeals council declined review, we treat the ALJ's ruling as the Administration's "final decision." *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Although we perform a *de novo* review of the ALJ's conclusions of law, our review of the ALJ's factual determinations is deferential. *Id*. We will affirm the ALJ's decision "if it is supported by substantial evidence." *Id*.; *see also* 42 U.S.C. § 405(g). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir.

2002). We do not "reweigh the evidence" in reviewing the ALJ's determination. *Id*.

### A. Step Five Inquiry

SSR 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the Dictionary of Occupational Titles.[1] The Ruling's language unambiguously sets out the ALJ's affirmative duty:

> When a VE or VS provides evidence about the require-ments of a job or occupation, the adjudicator *has an affirmative responsibility* to ask about any possible conflict between that VE or VS evidence and informa-tion provided in the DOT. In these situations, the adjudicator *will*:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reason-able explanation for the apparent conflict.

SSR 00-4p (emphasis added). The ALJ here took testimony from an expert as to whether certain job requirements were compatible with Prochaska's various limitations, but did not ask whether the expert's analysis conflicted with the DOT.

Relying on *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002), the magistrate judge here decided that Prochaska forfeited her SSR 00-4p argument by failing to raise it at the hearing. *Donahue* is our only interpreta-

---

[1] The Dictionary, published by the Department of Labor, gives detailed physical requirements for a variety of jobs. The Social Security Administration has taken "administrative notice" of the DOT. *See* 20 C.F.R. § 416.966(d)(1).

tion to date of the ALJ's obligation under that Ruling. It notes in dicta (because the Ruling was promulgated after the hearing in that case) that SSR 00-4p "requires the ALJ to '[e]xplain [in the] determination or decision how any conflict [with the Dictionary] that *has been identified* was resolved.'" *Id*. at 279 F.3d at 446. But the Ruling "emphasizes that *before* relying on [a vocational expert's] evidence to support a disability determination or decision," an ALJ must perform the required inquiry. SSR 00-4p (emphasis added). And since *Donahue*, other circuits have held that the Ruling imposes "an affirmative duty on the part of an ALJ to inquire about conflicts between vocational expert testimony and the DOT." *Rutherford v. Barnhart,* 399 F.3d 546, 557 (3d Cir. 2005); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1174-75 (10th Cir. 2005); *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002). In *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999), the Tenth Circuit explained the Ruling's core requirement:

> [B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.

*See also Hackett*, 395 F.3d at 1175 (SSR 00-4p "essentially codifies *Haddock*"). Prochaska was not required to raise this issue at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ.

The government concedes that the ALJ failed to comply with SSR 00-4p and explicitly waives any argument that *Donahue* excuses that failure, but contends that the error was harmless because "for a significant number of the jobs that the ALJ cited, there were no inconsistencies between the vocational expert's testimony and the DOT."

The specific positions identified by the ALJ were cashiering, assembly, packaging and visual inspection.

But Prochaska counters that each job, as defined by the DOT, requires specific physical capabilities that are beyond her limitations. She points out, for example, that according to the DOT the packaging and assembly work identified by the expert requires stooping, which the ALJ acknowledged she cannot do. And, she contends, the ALJ asked the expert for work that could be done by someone who could only "occasionally reach above shoulder level" while a cashier's requirements, under the DOT, include "reaching" frequently.

It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help. We cannot determine, based on the record, whether the expert's testimony regarding stooping or reaching was actually inconsistent with the DOT. That determination should have been made by the ALJ in the first instance, and his failure to do so should have been identified and corrected by the Appeals Council. We will defer to an ALJ's decision if it is supported by "substantial evidence," but here there is an unresolved potential inconsistency in the evidence that should have been resolved. *Haynes v. Barnhart*, 416 F.3d at 626. We vacate the district court's judgment upholding the Commission's decision and remand this case so that the ALJ can determine whether the job requirements identified by the vocational expert are, in fact, consistent with the definitions in the DOT and Prochaska's limitations.

## B. Prochaska's Obesity and Depression

The rest of Prochaska's arguments are unavailing, though we address them here in the interest of completeness. One of Prochaska's contentions is that the ALJ erred by not

considering her obesity and her depression in connection with her other impairments. She compares her case to *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000), in which we held that an ALJ, confronted with an obviously obese applicant, "should have considered the weight issue with the aggregate effect of her other impairments." *Clifford*, 227 F.3d at 873. Prochaska contends that the ALJ ignored the effect of her "documented obesity on her osteoarthritis in both knees and acute spasmodic back pain," when he should have recognized that her obesity, in tandem with her diagnosed back impairment, created a disability. In particular, she asserts that the ALJ violated Social Security Ruling 02-1p, which states that the adjudicator "will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-1p. The ALJ failed to perform this assessment, she argues, by adopting Dr. Cragg's medical report, which she characterizes as "solely based on Prochaska's back impairments and the objective evidence."

According to SSR 02-1p, an ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment. *See Clifford*, 227 F.3d at 873. But a failure to explicitly consider the effects of obesity may be harmless error. In *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), the ALJ did not address the claimant's obesity but did adopt "the limitations suggested by the specialists and reviewing doctors" who were aware of the condition. That, combined with the claimant's failure to "specify how his obesity further impaired his ability to work," made the error harmless: "although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions." *Id*.

The ALJ's implicit consideration of Prochaska's obesity through his review and discussion of her doctors' reports makes this case analogous to *Skarbek*. Although the ALJ

did not explicitly address Prochaska's obesity, he specifically predicated his decision upon the opinions of physicians who did discuss her weight: Drs. Zeman ("Ms. Prochaska is an overweight female in no distress"), Cederberg (she was overweight but "in no acute distress"), and Cragg (the treating physician, who described her as "[c]hronically obese") in particular. A number of other medical reports relied upon by the ALJ also noted her height and weight. No medical opinion in the record identified Prochaska's obesity as significantly aggravating her back injury or contributing to her physical limitations. She also fails to point to any other evidence suggesting that her obesity exacerbated her physical impairments. Because Prochaska failed to "specify how [her] obesity further impaired [her] ability to work," and because the record relied upon by the ALJ sufficiently analyzes her obesity, any error on the ALJ's part was harmless. *Skarbek*, 390 F.3d at 504.

Prochaska next contends that the ALJ similarly erred by not considering the effect of her depression and panic attacks on her alleged disability. The ALJ decided that "a mental impairment is not medically determinable in this matter," because Prochaska failed to allege a disabling mental impairment and had not "sought any psychological or psychiatric treatment," and the "state psychologists who reviewed this matter" concluded that there was no medically determinable mental impairment. Prochaska asserts that none of these reasons are sufficient, and that the ALJ "inexplicably" discredited the medical opinion of Dr. Cragg, who diagnosed her with depression and panic attacks.

Prochaska misapprehends the ALJ's determination. The ALJ did not discredit Cragg's diagnosis; to the contrary, that diagnosis is consistent with the ALJ's conclusion. While Cragg unambiguously diagnosed Prochaska with depression and panic attacks, he repeatedly reported that her psychiatric state was stable and controlled. He wrote

that Prochaska's "depression *can* be particularly disabling" (emphasis added), but clarified that she was "stabilized on Paxil" and that she had "[n]o other neurological complaints and states that her panic attacks are just fine as long as she stays on the Paxil." Cragg was of the opinion that Prochaska's mental condition was treatable and under control, and controllable conditions do "not entitle one to benefits or boost one's entitlement by aggravating another medical condition." *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). That the ALJ decided that Prochaska's alleged disability was not aggravated by her mental condition does not show that the he improperly discredited Cragg's diagnosis.

## C. Credibility Finding

Finally, Prochaska contends that the ALJ improperly made an adverse credibility finding that was not based on specific reasons supported by the record. *See* SSR 96-7p. She also argues that the ALJ improperly discredited her allegations of subjective pain despite objective medical evidence of an underlying physical condition. *See Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

We afford a credibility finding "considerable deference," and overturn it only if "patently wrong." *Carradine*, 360 F.3d at 758 (citations omitted). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citation omitted). An ALJ may disregard a claimant's assertions of pain if he validly finds her incredible. *Carradine*, 360 F.3d at 753-54. SSR 96-7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by

the evidence in the case record." An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, "functional limitations," and treatment (including medication). *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ summarized and discussed the various factors supporting his credibility determination. He explained that Prochaska's description of her regular domestic activities was "inconsistent with her allegation of disability." He also listed the medications she was taking in her course of treatment and called attention to the fact that her unemployment compensation was denied "after it was discovered that she had deliberately falsified an employment application." The hearing transcripts show that he heard extensive testimony from Prochaska regarding her allegations of aggravating factors, even if he did not discuss those allegations in his opinion. The ALJ's credibility determination, which took these diverse factors into account, was not "patently wrong." *Carradine*, 360 F.3d at 758.

## III.  Conclusion

Because the ALJ failed to comply with SSR 00-4p, we cannot conclude that there is substantial evidence supporting the outcome of the hearing. We remand this case in part so that the ALJ may perform the necessary inquiry under that Ruling and resolve whether there are, in fact, jobs in the national economy which Prochaska can perform. Although there were other problems with the ALJ's order, all other errors were harmless, and need not be addressed on remand. Accordingly, we VACATE and REMAND this case in part, and AFFIRM in part.

No. 05-3218                                                11

A true Copy:

     Teste:

 

                         _____

                         *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*