In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1547

SHIRLEY BRITTON,

*Plaintiff-Appellant*,

*v.*

MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 1232—**Rudolph T. Randa**, *Chief Judge.*

———————

ARGUED JANUARY 30, 2008—DECIDED APRIL 10, 2008

———————

Before FLAUM, MANION, and EVANS, *Circuit Judges.*

PER CURIAM.    Shirley Britton, a fifty-year-old obese woman who suffers from chronic pain, depression, and other ailments, has been trying to get Social Security benefits since 1997. At her third hearing before an administrative law judge ("ALJ"), her lawyer questioned the foundation of testimony by a vocational expert ("VE") that a significant number of jobs are available to someone with Britton's characteristics. The ALJ offered to have the VE provide the data she relied upon, but Britton's lawyer insisted instead that the VE provide much more

data. Because the data that counsel was offered (but did not accept) would have been enough to allow Britton to adequately test the VE's reliability, we affirm.

## I.

Britton first applied for Supplemental Security Income ("SSI") in April 1997, claiming that she suffered from hepatitis, anemia, and hypoglycemia. While her application was making its way through the Social Security Administration, Britton supplemented it by adding claims that she suffered from chronic pain, fatigue, and fibromyalgia. ALJ Ira Epstein held a hearing and in November 1998 denied Britton's claim. The ALJ found that Britton did suffer from some of the claimed impairments but was exaggerating her pain and limitations. According to the ALJ, Britton was limited to light work that involved simple, unskilled, low-stress, and routine tasks but still was not "disabled" under the Social Security Act because there were a significant number of such jobs in the national economy. The Appeals Council denied Britton's request for review in March 2000.

Britton did not seek further review in the district court. Instead, she filed a new application for SSI in November 2000. On this application Britton claimed disability due to fibromyalgia, depression, and chronic pain. Her second SSI claim came before ALJ Margaret O'Grady in September 2002. At the hearing, Britton, her husband, and her daughter testified about her severe limitations. Britton explained that she suffered from some level of pain every day, and that her mobility typically was limited to walking for ten minutes, standing for twenty minutes, and sitting for one hour. She also said that she could not lift

anything heavier than a gallon of milk, which required
two hands. Her husband testified that Britton always
was in pain and that until recently he had been bringing
a bucket into their bedroom at night for her to urinate
into because she could not make it to the bathroom
quickly enough. Britton's daughter testified that her
mother did not leave the house except to go to church and
that she had not attended the girl's elementary school
graduation (it was two years before the hearing) because
there were too many stairs to climb. In addition, a voca-
tional expert testified about the number of jobs available
to someone with Britton's limitations.

   In December 2002, the ALJ issued her decision, again
denying Britton's claim. Following the five steps for
evaluating disability, 20 C.F.R. § 404.1520, the ALJ found,
first, that Britton was not engaging in gainful employ-
ment and had not done so since 1981. Next, the ALJ
considered Britton's medical evidence and found that her
hepatitis, fibromyalgia, degenerative disc disease of
the lumbar spine, chronic pain syndrome, osteopenia,
depression, and anxiety constituted "severe" impairments.
But at step three the ALJ found that the impairments
did not meet or equal a listed impairment. Next, the ALJ
found that Britton retained the functional capacity to
perform unskilled, routine, simple work at the light
exertional level. The ALJ discounted Britton's complaints
of pain because they were not fully supported by the
medical records, she had not been fully compliant
with treatment recommendations, and she retained the
ability to perform some daily activities. Finally, relying
on the vocational expert, the ALJ concluded that Britton
was "not disabled" because there were many jobs existing
in Wisconsin that a person with her characteristics could

perform. As examples, the ALJ cited 16,000 jobs for cashiers, 1,600 jobs for sales clerks, 18,000 for assemblers, 3,800 for office helpers, and 1,300 for security guards.

Britton again sought review at the Appeals Council, but her request was denied in March 2003. This time Britton filed a complaint in district court, and in October 2003 the court remanded to the Commissioner of Social Security. Although the record does not contain a copy of the district court's remand order, it does contain the subsequent remand order issued by the Appeals Council. That order suggests that the case was remanded because the ALJ had based her decision on incomplete medical reports and a less-than-thorough review of Britton's medical history. Consequently, the Appeals Counsel ordered the ALJ to expand the record and conduct a more searching review.

On remand the ALJ held a supplemental hearing in March 2005. At this hearing Britton was, for the first time, represented by counsel. Britton testified to a connection between her chronic pain and her stress level. Certain stressful situations—failing to complete tasks, certain tones of voice, being looked at the wrong way, not knowing how to respond to authority figures, and being unable to think clearly—caused her episodes of distress four or five times every day. Such stressful events would increase Britton's physical pain, and her pain would, in turn, lead to more stress and depression. Britton testified that her depression had caused her to withdraw from crowds. Her testimony about her mental impairments was supported by a 2004 report from Dr. Matusiak, who diagnosed her with major depression and anxiety with agoraphobia.

As to her ability to work, Britton testified that she sometimes helps wash dishes but cannot do that house-

hold chore, or any other, on a sustained basis because her range of motion is so limited. Her pain and obesity make it impossible to bend and pick things up off the ground. And she suffered side effects from her medications including asthma, breathing problems from smells, and claustrophobia. Dr. Reddy, Britton's treating physician, concluded, based on a February 2002 examination, that Britton would be "incapable of even 'low stress' jobs." But another doctor who, after Reddy's examination, began treating Britton with calcium and vitamin D treatments noted substantial improvements in her condition by November 2002.

After Britton testified, a vocational expert again gave an opinion about the jobs available to someone with Britton's characteristics. That person, the ALJ found, is 46 years old, has a GED but no work history, and is limited to "occasional climbing and stooping, kneeling, crawling, balancing and crouching" yet is still "able to perform routine repetitive work" that requires following "simple noncomplex instructions." According to the VE, the following jobs were available to such a person: 4,000 in retail sales, 17,000 for cashiers, 2,500 for assembly workers, 15,000 for production workers, 4,500 for office workers, and 3,100 for security guards. When the ALJ asked the VE to restrict her totals to sedentary jobs, the VE testified that many jobs would still be available: 2,000 for assembly workers, 2,100 for production workers, 1,200 for office workers, and 300 for security guards. The VE testified that these jobs would be available in the same numbers even with the further limitations of "no climbing, no balancing, no working at heights or hazards," "no exposure to heat or cold," and "no exposure to concentrated fumes, dust, environmental type irritants." The VE also testified that a need to alternate between sitting

and standing would not reduce the number of available jobs because the category of light work is limited to jobs that allow sitting one third of the day, and the category of sedentary work is limited to jobs that allow sitting two thirds of the day. Finally, the VE testified that adding a further limitation restricting public contact and interaction with coworkers would eliminate only the cashier, sales, and office jobs.

On cross-examination, Britton's counsel questioned the VE on the source of her data, and the VE explained that it came from *Occupational Employment Quarterly*, a "private" publication. Counsel asked that the entire publication be placed in the record, but the ALJ, noting its size and calling it a "standard publication," refused. The ALJ asked whether counsel wanted the census code numbers for the jobs the VE listed as well as copies of the pages from *Occupational Employment Quarterly* upon which the VE relied, but counsel insisted on having a copy of the entire publication. Although counsel did eventually allow the VE to provide the census codes, he refused to accept only copies of the pages on which she relied. Counsel instead demanded access to much more.

In her written opinion, the ALJ again followed the five steps for evaluating disability. 20 C.F.R. § 404.1520. First, she found that Britton had not engaged in substantial gainful employment since her alleged onset date. Next, the ALJ considered Britton's medical evidence, summarizing the diagnoses and treatments of a variety of doctors. At step two the ALJ found that in addition to the impairments listed in her previous decision—hepatitis, fibromyalgia, degenerative disc disease of the lumbar spine, chronic pain syndrome, osteopenia, depression, and anxiety—Britton also suffered from osteomalacia, obesity,

hyperparathyroidism, rib fractures, and anemia. As she had done previously at step two, the ALJ found these impairments to be "severe," but at step three she again found them not severe enough to meet or equal any listed impairment. Although Britton exhibited some of the features of affective disorder, a listed impairment, her functional limitations were not great enough to fully satisfy that listing.

At step four the ALJ found that Britton had retained the "residual functional capacity to perform a significant range of 'light' work activity." The ALJ concluded that Britton's mental impairments limited her to "unskilled, routine, simple work" and her physical impairments limited her to only occasionally "climbing, stooping, kneeling, crouching, crawling or reaching." The ALJ did not doubt that Britton was suffering from pain, but found that her testimony about its intensity was not fully credible. Based on the clinical findings and Britton's testimony, the ALJ doubted Britton's claim that she could not sustain any level of full-time employment. Finally, at step five the ALJ accepted the VE's testimony and found that Britton was not disabled because jobs that Britton could perform existed in significant numbers.

The Appeals Council denied Britton's request for review, making the ALJ's decision the final decision of the Commissioner. *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). The district court upheld that final decision.

## II.

On appeal Britton raises several arguments, but only her contention that she should have had more access to the VE's data merits detailed discussion. Regarding her other

arguments, we apply our usual standard of deferential review, *see Schmidt v. Astrue*, 496 F.3d 833, 841-42 (7th Cir. 2007), and hold that the ALJ properly concluded that Britton was not disabled for any twelve-month period after her alleged onset, *see* 42 U.S.C. § 1382c(a)(3)(A), and that the ALJ's residual function capacity finding is supported by substantial evidence in the record.

Britton's challenge regarding her access to the VE's data is really an argument that the Commissioner failed to satisfy his step-five burden of "providing evidence" demonstrating that other work the claimant can perform "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *see Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). When the Commissioner satisfies this burden through expert testimony from a VE, that testimony must be reliable. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

We have held that any data or reasoning underlying the VE's bottom line must be " 'available on demand' " so that the claimant may test the reliability of the VE's testimony. *McKinnie v. Barnhart*, 368 F.3d 907, 910-11 (7th Cir. 2003) (quoting *Donahue*, 279 F.3d at 446). In *McKinnie*, we held that the data underlying a VE's testimony was not "available on demand" where the VE testified that her figures were based on government statistics and her own surveys but had not prepared a written report, did not bring any reference materials to the hearing, and could not provide citations to the materials on which she relied. *Id.* The ALJ in *McKinnie* told the claimant's

attorney that the VE could refuse to compile her data and references unless the claimant compensated her for her time. *Id.* at 909. We rejected that view and held that the data underlying a VE's testimony is not "available on demand if the claimant must pay" the VE to produce it. *Id.* at 911.

Britton argues that she was barred from access to the VE's data just as the claimant in *McKinnie* was. Not so. In contrast to the VE in *McKinnie*, the VE in this case brought a substantial amount of materials with her to the hearing and was willing to provide a selection—those portions on which she relied—to Britton's counsel. As we read the hearing transcript, the ALJ asked Britton's counsel if he wanted the census codes and copies of the pages on which the VE relied, but Britton's counsel balked. He allowed the VE to list the census codes, but rather than accept the selections of the VE's data, which would have allowed him to sufficiently test the reliability of her testimony, he demanded more, much more. The data underlying the VE's testimony was "available on demand," as required by *McKinnie*, because it was formally offered to Britton's counsel. That he did not accept the offer is not a reason to reverse the ALJ's determination.

We recognize that the lack of pretrial discovery in Social Security hearings can make the task of cross-examining a VE quite difficult. As we held in *McKinnie*, the data underlying a VE's testimony must be available on demand to facilitate cross-examination and testing of the VE's reliability. But we refuse to endorse a system that drags out every Social Security hearing to an interminable length. We encourage ALJs and the Social Security bar to cooperate in such a way that makes data underlying VE testimony available on demand without making every hearing

impossibly long. Perhaps brief recesses should be provided so attorneys can examine the sources relied upon by VEs or perhaps, as we believe was offered in this case, the claimant's attorney should have access to copies of the pages of those sources on which the VE relied. And an attorney who wants to make an argument based on data unavailable at the hearing should have the opportunity to do so by supplementing the record after the hearing. (Britton's attorney was given that opportunity and did not take it.) We believe that our "available on demand" rule and these suggestions can be applied to achieve the proper balance between the needs of the claimant to effectively cross-examine the VE and the needs of the Commissioner to hold efficient hearings.

### III.

Accordingly, we AFFIRM the Commissioner's decision.

USCA-02-C-0072—4-10-08