In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1100

JOSEPH KRELL,

*Plaintiff-Appellee,*

*v.*

ANDREW M. SAUL,
Commissioner of Social Security,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:16-cv-00951 — **Nancy Joseph**, *Magistrate Judge.*

ARGUED SEPTEMBER 26, 2018 — DECIDED JULY 24, 2019

Before EASTERBROOK, ROVNER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* We focus here on an issue involving a well-known figure in Social Security cases: the vocational expert. Specifically, we address whether an administrative law judge (ALJ) can decline to issue a subpoena requiring a vocational expert to produce his underlying data sources. Given recent Supreme Court precedent, we conclude that, here, the ALJ did not abuse his discretion by denying a

request to issue such a subpoena. *See Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

## I. Background

### A. The Relevant Framework

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1); *see also Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). The ALJ is responsible for conducting a five-step sequential evaluation process. Step one is to determine whether the claimant is currently engaging in gainful employment. At steps two and three, the ALJ considers the severity of the disability. At step four, the ALJ determines what the claimant's disability leaves him able to do, i.e., his residual functional capacity, and whether given that capacity he may still perform his past work. And last, at step five, the ALJ assesses the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant can perform work that is available in significant numbers in the national economy. 20 C.F.R. § 404.1520; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The final step is the crucial one in this case. It is also the only step for which the Administration bears the burden of proof. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). To assess a claimant's ability to continue working, the ALJ often relies on the testimony of vocational experts. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). Vocational experts must have specialized and current knowledge of "working

conditions and physical demands of various jobs; … the exist-
ence and numbers of those jobs in the national economy; and
involvement in or knowledge of placing adult workers with
disabilities into jobs." *Biestek*, 139 S. Ct. at 1152 (internal quo-
tation marks omitted); *see also Chavez v. Berryhill*, 895 F.3d 962,
964 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 808 (2019). In provid-
ing assessments, vocational experts may rely on publicly
available sources as well as data developed through their own
experiences and research. *See Biestek*, 139 S. Ct. at 1152 (citing
Social Security Ruling, SSR 00–4p, 65 Fed. Reg. 75760 (2000)).

## B. Joseph Krell's Application

Joseph Krell, a former ironworker in Wisconsin, applied
for disability benefits due to problems with his knee. His ap-
plication was denied initially and on reconsideration. He then
requested a hearing before an ALJ.

In October 2014, Krell was notified that the ALJ had sched-
uled his hearing in December 2014. The notice stated that a
vocational expert would testify at the hearing. It also stated
that Krell had the right to request a subpoena for documents
or testimony "that you reasonably need to present your case
fully."  If Krell wished to obtain a subpoena, he could write to
the ALJ and describe:

- "What documents you need and/or who the wit-
  nesses are;

- The location of the documents or witnesses;

- The important facts you expect the document or
  witness to prove; and

- Why you cannot prove these facts without a sub-
  poena."

*See also* 20 C.F.R. § 404.950(d) (describing how to obtain a subpoena).

Before the hearing, Krell's counsel wrote to the ALJ requesting a subpoena that would require the vocational expert to produce at the hearing "certain documents upon which the expert may rely in forming opinions during the course of the hearing." The requested documents were extensive and included statistics, reports, surveys, summaries, work product, and more. Counsel also requested a description of the methodologies used by publishers or compilers of the statistics upon which the expert planned to rely. Counsel noted that he could not adequately cross-examine the vocational expert if the expert did not bring these materials to the hearing. Among other objections, counsel objected to the expert testifying without producing reliable supporting data, and asked that the ALJ notify him in advance of the hearing if he believed the request was overbroad or burdensome. The ALJ did not respond to the subpoena request before the hearing.

At the hearing, the ALJ denied the subpoena request, reasoning that the request was deficient because it had not specified what the documents would show and why these facts could not be shown without a subpoena. *See* 20 C.F.R. § 404.950(d). Counsel reiterated that he needed the materials the vocational expert would rely on at the hearing so that he could adequately cross-examine the expert about them. The ALJ told counsel that if he took issue with the vocational expert's testimony, he could challenge it on a post-hearing basis.

The ALJ proceeded with the hearing, allowing the vocational expert to testify by phone. The ALJ provided the expert with a hypothetical residual functional capacity mirroring his assessment of Krell's abilities. In response, the expert testified

that Krell could work as a mail clerk, unskilled inspector, or retail clerk, per the Dictionary of Occupational Titles. In the expert's estimation, these positions together made up 73,000 jobs in Wisconsin.

During cross-examination, the vocational expert stated that to determine available job numbers, he relied on the occupational projections for the state of Wisconsin, produced by the Department of Workforce Development in 2014. Counsel asked that the expert provide page numbers and codes for the Wisconsin projections, which the expert did for the mail clerk position. When he did not immediately find this information for the inspector position, counsel responded "Okay" and ended his cross-examination. Despite the ALJ's invitation to do so, Krell made no post-hearing submission challenging the expert's testimony.

The ALJ issued a partially favorable decision, finding that Krell was disabled and entitled to benefits, but only as of March 2014 (due to his advancing age), rather than July 2011, as Krell had claimed. Based on the vocational expert's testimony, the ALJ concluded that up to March 2014, Krell was able to perform work existing in significant numbers in the national economy. The ALJ noted that the expert was "thoroughly examine[d]" and "unimpeached."

The Social Security Appeals Council denied review, ending Krell's pathway within the Administration. Krell then successfully appealed to the district court, with a magistrate judge presiding by consent. Krell's subpoena request, the magistrate judge explained, had stated what facts the requested documents would show. And although the request had not stated expressly why a subpoena was necessary, it was clear that counsel could not adequately cross-examine

the vocational expert without prior access to his underlying sources. Therefore, the magistrate judge concluded that the ALJ had erred in denying Krell's request for a subpoena.

The Commissioner appeals.

## II. Discussion

The only issue before us is whether the ALJ erred in denying Krell's prehearing subpoena request. We review the magistrate judge's determination *de novo*. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). We review the ALJ's denial of the subpoena request for an abuse of discretion. *See, e.g., Barrett v. Berryhill*, 906 F.3d 340, 345 (5th Cir. 2018); *Passmore v. Astrue*, 533 F.3d 658, 665 (8th Cir. 2008).

While this case was pending, the Supreme Court held in *Biestek* that a vocational expert is not categorically required to produce his supporting data. 139 S. Ct. at 1156–57. Instead, the factfinder should evaluate the vocational expert's testimony, including his failure to produce the data, and determine whether the testimony is reliable. If an ALJ, for example, finds an expert trustworthy and believes he has good reason to withhold underlying sources—the sources might include private information or take significant time to compile, for example—the failure to produce such sources "need not make a difference." *Id.* at 1156. In other cases, "the refusal to disclose data, considered along with other shortcomings, will prevent a court from finding that a reasonable mind could accept the expert's testimony." *Id.* at 1156 (internal quotation marks omitted). Although an expert's refusal to provide his sources may interfere with the claimant's cross-examination of the expert, "an ALJ and reviewing court may properly consider

obstacles to such questioning when deciding how much to credit an expert's opinion." *Id.* at 1156.

Turning to Krell's case, it is within an ALJ's discretion to issue a prehearing subpoena. He may do so when the subpoena is "reasonably necessary for the full presentation of a case" and when certain "facts could not be proven without issuing a subpoena." 20 C.F.R. § 404.950(d).

We agree with Krell and the magistrate judge that the subpoena request did state why Krell thought the requested documents were important and that Krell believed he needed them to "adequately cross examine" the vocational expert. But that Krell alleged that a subpoena was necessary did not automatically make it so. *See Butera v. Apfel*, 173 F.3d 1049, 1058–59 (7th Cir. 1999). At the hearing, the ALJ pointed out that, despite Krell's assertion, Krell had not in fact shown why it was necessary for the expert to produce his sources, a prerequisite to obtaining a subpoena. Why, the ALJ asked, couldn't counsel just question the expert about his sources at the hearing? And if Krell wanted to challenge the expert's reliance on those sources, why couldn't he do so post-hearing? These questions, it turns out, were spot on.

We keep in mind here that Krell's argument is that the ALJ erred in denying the subpoena request, requiring reversal. He has not argued that, putting the subpoena request aside, the vocational expert's testimony did not constitute substantial evidence.[1] *See Chavez*, 895 F.3d at 967 (noting that, on appeal,

---

[1] While Krell alluded to this in his post-*Biestek* position statement, the discussion was brief and underdeveloped. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and

"we ask whether substantial evidence supported the ALJ's conclusion"). So, we analyze only the subpoena request, not the expert's eventual testimony, and ask whether Krell was entitled to require that the expert produce his underlying sources at the hearing.

What Krell sought to do, it seems, was to require the vocational expert to make his underlying sources available on demand. *See McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) ("A vocational expert is free to give a bottom line, but the data and reasoning underlying that bottom line must be available on demand if the claimant challenges the foundation of the vocational expert's opinions.") (internal quotation marks omitted), *abrogated by Biestek*, 139 S. Ct. 1148. *Biestek*, however, rejects such a requirement; *Biestek* clearly held that vocational experts are not categorically required to provide their underlying data. The expert may decline to do so, and if he does, this failure goes to the weight the ALJ may give the testimony. Considering the totality of his testimony, the expert can be deemed credible even if he provides no underlying data. The ALJ makes such determinations on a case-by-case basis. *Biestek*, 139 S. Ct. at 1157.

We acknowledge that it would be *helpful* to have the expert's underlying sources at a hearing. But, beyond arguing for a categorical rule, which, like in *Biestek*, cannot be imposed here, Krell has advanced no reason why it was *necessary* for the expert to produce his underlying sources. We therefore cannot say that the ALJ erred in denying the subpoena request.

---

undeveloped arguments are waived, as are arguments unsupported by legal authority.").

We want to be clear that our holding today and that of *Biestek* do not give vocational experts carte blanche to testify without providing underlying sources. It is certainly best practice for vocational experts to provide underlying sources at hearings, and we encourage them to do so. *See Biestek*, 139 S. Ct. at 1155 (noting that a vocational expert's testimony would be "more reliable and probative" and "a best practice for the SSA and its experts" if the expert "produced supporting data"); *see also* Social Security Administration, *Vocational Expert Handbook*, 37 (Aug. 2017), https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf ("You should have available, at the hearing, any vocational resource materials that you are likely to rely upon and should be able to thoroughly explain what resource materials you used and how you arrived at your opinions."). We will review on a case-by-case basis situations where a vocational expert does not produce his sources and the ALJ declines to require him to do so. In some cases, the vocational expert's testimony may prove to be unreliable without underlying sources, and in those cases the testimony may neither constitute substantial evidence nor be used as the basis for an ALJ's determination.

On a final note, we have previously suggested that in cases where underlying data may not be available at the hearing, (say, for example, the vocational expert testified by phone, as was the case here), the claimant should have the opportunity to make additional argument about the data post-hearing. *Britton v. Astrue*, 521 F.3d 799, 804 (7th Cir. 2008) (per curiam). This suggestion stems from the recognition "that the lack of pretrial discovery in Social Security hearings can make the task of cross-examining a [vocational expert] quite difficult." *Id.* We have never mandated that post-hearing challenges be

allowed, and we decline to do so here. But nothing in *Biestek* forces us to reconsider our recommendation, and we continue to encourage ALJs to allow claimants to submit post-hearing argument about a vocational expert's testimony, especially when the underlying sources are not available during the hearing or are not provided at all.

### III. Conclusion

For the foregoing reasons, we REVERSE the judgment of the district court and AFFIRM the Commissioner's decision.