NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2009
Decided July 22, 2009

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-3527

| | |
|---|---|
| MARK LAWRENCE, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 07-cv-515-bbc |
| MICHAEL J. ASTRUE, Commissioner of | |
| Social Security, | Barbara B. Crabb, |
| *Defendant-Appellee*. | *Chief Judge*. |

**O R D E R**

Mark Lawrence, who previously worked as a truck driver, suffers from degenerative disc disease. Following a hearing to determine whether he qualifies for disability benefits, an Administrative Law Judge ("ALJ") found that Lawrence could perform sedentary and some light work. On that basis, the ALJ denied Lawrence's claim for benefits because, according to the ALJ, a significant number of jobs meeting his Residual Functional Capacity ("RFC") exist in his regional economy. Lawrence does not challenge his RFC determination, and though he does make at least one valid point about the ALJ's assessment of the jobs available for someone with that RFC, the concerns he raises

are not substantial enough to undercut the finding of no disability. Accordingly, we uphold the denial of benefits.

## Background

The parties agree on the vast majority of facts in this case, and thus only a brief recitation of Lawrence's medical history is needed. Lawrence first experienced back pain while living in Arizona in early 2003. His primary care physician prescribed Vicodin for the pain and referred him to an orthopedic surgeon. An MRI revealed some disc degeneration along with a protruding disc that was pinching a nerve. Even after orthopedist ordered three epidural-steroid injections in the winter of 2003, but Lawrence continued to suffer back pain. A second orthopedist recommended surgery and, in April 2004, performed a microdiskectomy to remove the part of the disc abutting the nerve. Initially, the surgery lessened Lawrence's back pain, though he continued to report some numbness in his feet.

Lawrence's back pain returned in 2004, and in March of that year he applied for Social Security disability benefits. A consulting physician for the state examined Lawrence in June and opined that he could stand, walk, and sit without restrictions and that he could lift 50 pounds occasionally and 25 pounds frequently. The physician also concluded that Lawrence could reach without limitation, could climb frequently, and could stoop, kneel, and crouch occasionally. These restrictions would allow for even some medium work. *See* 20 C.F.R. § 404.1567. Based on this report and the medical records from Lawrence's treating physicians, the Commissioner of Social Security administratively denied his application for benefits.

Following this initial denial, Lawrence returned to his primary-care physician in August 2004 and complained that his back pain had significantly worsened; he was prescribed Ibuprofen and Tylenol III and referred to another orthopedist. A new MRI revealed degeneration of his lumbar discs, but no disc herneation. Lawrence sought reconsideration of his disability claim from the Commissioner. The Commissioner obtained another state-agency evaluation of Lawrence's capacity to work. This second consultant likewise concluded that Lawrence could lift 50 pounds occasionally and 25 pounds frequently, that he could reach without limitation, and that he could stoop, kneel, and crouch occasionally. This time, however, the consultant concluded that Lawrence could stand, walk, and sit only about six hours in an eight-hour day, and that he lacked all ability to climb ladders, ropes, and scaffolds. But even with these limitations, he could perform medium work, so the Commissioner denied Lawrence's request for reconsideration.

In the summer of 2005, Lawrence went to the Veterans Administration hospital in Phoenix to complain of persistent back pain, and the hospital staff primarily treated him with pain medication. Around this time Lawrence and his family moved to Wisconsin. Throughout 2005 and 2006 Lawrence visited a chiropractor for back adjustments in an attempt to manage the pain. In January 2006 he retained a new primary-care physician, Dr. Aiping Smith. Dr. Smith referred Lawrence to a physical therapist, recommended additional epidural steroid injections, and consulted a surgeon about Lawrence's prospects for further surgery. Lawrence received two epidural-steroid injections but refused additional injections in April 2005. When Dr. Smith informed Lawrence that the surgeon had predicted he would not benefit from additional surgery, Lawrence instead attended physical therapy throughout 2006 and experienced some improvement. Nonetheless, a MRI performed in October 2006 revealed additional disc degeneration in Lawrence's back.

The hearing before the ALJ occurred in November 2006. Several months before the hearing Lawrence's treating physician, Dr. Smith, completed a form addressing his physical capabilities and capacity for returning to work. Dr. Smith found that Lawrence could perform sedentary work. Like the first state-agency consultant, Dr. Smith did not identify any limitation on standing, walking, or sitting, but he did limit Lawrence to lifting a maximum of 10 pounds and suggested that any employment should demand only seldom bending, squatting, twisting, or pivoting. Dr. Smith opined that these restrictions still allowed for sedentary work. Lawrence's physical therapist also submitted an evaluation. The physical therapist, in contrast with the state-agency consultants and Dr. Smith, reported that Lawrence could not stand or walk more than two to four hours in an eight-hour day. She stated that Lawrence could sit four to six hours per day, and was limited to occasional reaching, climbing, kneeling, bending, and squatting. These restrictions, according to the physical therapist, would limit Lawrence to light work. Dr. Smith's limitations in fact are more consistent with light work, whereas the physical therapist's evaluation does comport closely with an RFC for sedentary work. *See* 20 C.F.R. § 404.1567.

At the hearing before the ALJ, Lawrence testified that the disc degeneration in his back causes him severe pain and that on bad days he is unable to get out of bed because of the pain. He testified that he experiences bad days at least half the month. He said the pain shoots down his legs while sitting, and because of the pain he cannot stand for two to four hours total during an eight-hour work day or lift eight pounds repetitively. Lawrence's wife testified and corroborated his account of his pain and limitations at home.

The ALJ asked the Vocational Expert ("VE"), William Dingess, whether a 40-year-old former truck driver could resume that occupation if he could lift no more than ten pounds, sit for no more than four to six hours per day, stand/walk for no more than two to

four hours per day, and only occasionally climb, bend, squat, kneel, or reach. The VE said no but added that such an individual would be capable of performing sedentary jobs and some light jobs. The VE listed jobs existing in the Wisconsin economy meeting those limitations, including general office clerk, information clerk, bookkeeping clerk, industrial inspector, and cashier. The VE further explained that even more jobs for industrial inspectors, hand packers, clerks, and cashiers would be available if the person could engage in a moderate amount of stooping, kneeling, crouching, and crawling. The VE acknowledged that his testimony was largely based on information in the Dictionary of Occupational Titles (DOT) and the Occupational Employment Quarterly (OEQ). He was unable to explain, however, the statistical formula used in the OEQ for determining the number of jobs categorized as "sedentary" versus "light."

The ALJ agreed to leave the record open for 30 days after the hearing so that Lawrence could submit the results of his most-recent MRI. Three months later, Lawrence's attorney (who also represents him here) sent a letter to a different ALJ demanding the raw data used by the VE, whom counsel incorrectly identified as Michael Guckenberg. The letter included Lawrence's full name and social security number as identifying information. Counsel attached the report of Lawrence's most-recent MRI.

Shortly thereafter the ALJ issued his decision. The ALJ performed the requisite five-step analysis, *see* 20 C.F.R. §§ 404.1520, 416.920, and concluded that Lawrence is ineligible for benefits. At step one the ALJ found that Lawrence had an onset date of July 2003. At steps two and three he concluded that Lawrence's degenerative disc disease qualifies as a severe impairment under 20 C.F.R. § 404.1520(c), but does not meet the criteria of any impairment included in the Listing of Impairments. The ALJ declined to fully credit Lawrence's complaints of pain and physical limitations and instead relied heavily on the assessments of Dr. Smith and the state-agency consultants. Using these opinions, the ALJ found that Lawrence possesses an RFC that allows him to perform all sedentary jobs and some light work so long as he is not required to stand/walk more than two to four hours in an eight-hour day, and the job requires only occasional bending, squatting, kneeling, climbing, and reaching with no repetitive use of his feet. *See* 20 C.F.R. § 404.1567.

At step five the ALJ first concluded that Lawrence's RFC precluded his return to work as a truck driver. The ALJ next decided that Rule 201.28 of the medical vocational guidelines—commonly referred to as "grids"—mandates a finding of not disabled in this case because, according to the ALJ, Lawrence is a younger individual capable of performing a full range of sedentary work. The Commissioner promulgated the grids to reflect various vocational factors such as age, education, and work experience, in combination with an individual's exertional limitations. *See* 20 C.F.R. pt. 404, supbt. P,

App. 2, § 200.00(a).  The Commissioner has statistically verified that a significant number of jobs exist in the national economy for certain combinations of vocational factors and exertional limitations.  *See id.* § 200.00(b).  These grids, however, do not account for *nonexertional* limitations such as postural and manipulative restrictions, and thus the Commissioner has deemed the grids advisory and required that an ALJ consult a VE in cases where an applicant for benefits is so limited.  *See id.* at § 200.00(e).  The ALJ, though, did not stop with the grids.  As an independent alternative to Rule 201.28, the ALJ also relied on the VE's testimony to find that a significant number of jobs are available in the national economy to someone capable of performing all sedentary work and some light work.

The Appeals Council denied review, and the district court affirmed the ALJ's ruling.

**Discussion**

Lawrence does not challenge the ALJ's conclusion that he is capable of performing a full range of sedentary jobs and a partial range of light work.  Instead he argues about the availability of jobs in the sedentary and light categories.  The Commissioner of Social Security bears the burden of showing that there are a significant number of jobs that the claimant is capable of performing.  *See* 20 C.F.R. § 404.1560(c)(2); *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009).  The Commissioner typically relies on a VE to assess whether there a significant number of acceptable jobs are available in the national economy. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 2009).  We review the ALJ's determination to ensure that it is supported by substantial evidence.  *See Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009).

The bulk of Lawrence's brief is devoted to undermining the VE's opinion about particular jobs available to him.  But those arguments are irrelevant if the ALJ correctly applied the grids, which direct an ALJ to find a claimant not disabled if he is a young person capable of performing a full range of sedentary work.  *See* 20 C.F.R. pt. 404, supbt. P, App. 2, Table No. 1, Rule 210.28.  An ALJ may use the grids to determine whether a significant number of jobs exist in the economy that an individual with certain exertional impairments can perform.  *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Lawrence argues that the ALJ should not have applied the grids because his RFC includes a limitation on reaching, which he describes as a nonexertional limitation that the grids do not take into account.  The Commissioner responds that Lawrence waived this argument by waiting until his reply brief before the district court to raise it.  Lawrence counters that he adequately raised the issue before the district court, and that the ALJ's

reliance on the grids is a permissible ground for appeal because the district court upheld the denial of his disability claim based partially on the grids.

The Commissioner's waiver argument is baseless. Lawrence may not have said anything about the use of the grids when he appealed the ALJ's decision to the Appeals Council, but neither was he required to say anything at that point. *See Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999). Without doubt, however, he raised the subject to the satisfaction of the district judge, who addressed his argument at length. The purpose of the waiver rule—to allow the district court an opportunity to rule on claimant's arguments before they reach this court—has been satisfied in this case and therefore Lawrence's challenge to the ALJ's application of the grids is properly before this court. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) (holding that where an issue is raised in the district court, but raised late, and the district court declines to deem the issue waived, the issue may be raised on appeal).

And Lawrence's argument that the ALJ mistakenly applied the grids has merit. The grids take into account only exertional limitations; if a claimant suffers from both exertional and nonexertional limitations, the ALJ must consult a VE to establish whether a significant number of jobs exist allowing for both types of limitations. *See* 20 C.F.R. pt. 404, supbt. P, App. 2 § 200.00(e); *Villano v. Astrue*, 556 F.3d 558, 564 (7th Cir. 2009); *Haynes v. Barnhart*, 416 F.3d 621, 628-29 (7th Cir. 2005); *Luna v. Shalala*, 22 F.3d 687, 691-92 (7th Cir. 1994). In his RFC evaluation, the ALJ found that Lawrence was limited to occasional reaching. A limitation on reaching is a nonexertional limitation. *See* SSA 85-15, *available at* http://www.ssa.gov/OP_Home/rulings/di/02/SSR85-15-di-02.html (last visited July 13, 2009). The Commissioner counters that the limitation on reaching was not a *substantial* nonexertional limitation, and therefore the grids are still applicable. *See* SSR 83-14, *available at* http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR83-14-di-02.html; *see also Nelms v. Astrue*, 553 F.3d 1093, 1100 (7th Cir. 2009). The problem with the Commissioner's argument is that at step five the burden of showing that the limitation on reaching is not significant rested not on Lawrence, but on the Commissioner. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(iv); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). To meet this burden the Commission would have had to solicit testimony from a VE or otherwise consult vocational materials to establish that Lawrence's inability to reach more than just occasionally bore no significant burden on his ability to perform sedentary jobs. *See Villano*, 556 F.3d at 564; *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996). As it is, the Commissioner points to no evidence establishing that Lawrence's limitation on reaching was not substantial; the Commissioner rests on assumption. Therefore, ALJ's reliance on the grids at step five is not supported by substantial evidence.

At step five the ALJ alternately relied on the VE's testimony that a significant number of jobs exist in the regional economy that comport with Lawrence's RFC. Lawrence argues that the case should be remanded, however, because he never received access to the VE's raw data. We have held that the data or reasoning underlying a VE's testimony must be "available on demand" so that the claimant may test the reliability of the VE's testimony. *See McKinnie v. Barnhart*, 368 F.3d 907, 910-11 (7th Cir. 2004); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). The Commissioner argues that Lawrence did not timely demand the VE's data and therefore the ALJ did not err when he refused to force its disclosure. The Commissioner points out that Lawrence did not demand the data at the hearing, and that his subsequent letter was sent three months after the close of the hearing and listed the wrong ALJ and VE. Lawrence argues that the Commissioner failed to raise this argument before the district court and therefore it is waived on appeal. Though it would have been better for Lawrence to make his demand closer to the close of hearing so as to prevent undue delay, *Britton v. Astrue*, 521 F.3d 799, 804 (7th Cir. 2009), Lawrence is correct that the Commissioner failed to challenge the adequacy of demand in the district court and therefore the argument is waived. *See, e.g., Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 719 (7th Cir. 2008). Regardless, the ALJ admitted the letter into the record and mentioned the letter in his decision, so there is no concern that the ALJ was unaware of Lawrence's demand. Therefore, the ALJ should have required the VE to supply Lawrence with the data underlying his conclusions.

But this violation of *McKinnie* is entirely harmless in this case because Lawrence does not challenge the validity of the VE's conclusions. Rather, at the hearing and on appeal he argues only that he needs the data in order to identify the number of jobs listed by the VE that are light versus the number that are sedentary. He does not challenge, nor has he ever challenged, the underlying determination that he can do *some* light work, but, as best as we can tell, Lawrence seems to think that the "light" positions identified by the VE include some that he could not perform with his RFC. This argument fails because the VE testified he listed only light work that corresponds with the specific RFC limitations in the hypothetical presented by the ALJ. Therefore, even if Lawrence had obtained the VE's data and differentiated which jobs were sedentary versus light, such a distinction would have no meaningful bearing on the outcome of his case. So, the failure to provide the data was harmless. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625-26 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Moreover, even if Lawrence had challenged the conclusion that he can perform some light work, there exists little doubt that a significant number of the nearly 15,000 jobs listed by the VE would qualify as sedentary. We have held that a relatively small number of positions, as low as 1,400 jobs, can qualify as significant. *See Lee v. Sullivan*, 988 F.2d 789,

794 (7th Cir. 1993). On cross-examination, Lawrence's counsel pressed the VE to provide the DOT codes that corresponded with the jobs he had listed, and the VE provided a total of ten DOT codes. The DOT lists six of these as sedentary jobs and four as light work. *See* DOT Vol. III (5th ed. 2003). Given the total number of positions listed, it seems highly unlikely that a significant number would not qualify as sedentary work.

Lawrence's final two arguments are similarly unpersuasive. He argues that the ALJ failed to assess the reliability of the VE's testimony, and that because the VE's testimony deviated from the DOT, the ALJ was required to provide a reasonable explanation for the deviation. But the VE explained that his testimony was based on the DOT, the OEQ, and his own previous experience. Lawrence repeatedly refers to a "conflict" between the DOT and the VE's testimony, but he points to no examples of jobs listed by the VE that fail to conform with the DOT. Rather the ALJ specifically asked the VE about the DOT:

> ALJ:    Alright, and this information you've given me, that's consistent with the DOT?
>
> VE:     Yes.

Even more persuasive is the fact that the VE listed the DOT codes that correspond with his testimony. Moreover, the VE's reliance on the OEQ was similarly innocent—we have found no issue with VE's regularly relying on the OEQ. *See Liskowitz*, 559 F.3d at 743-44. The ALJ did not explain a deviation with the DOT because there was no such deviation. *See Overman v. Astrue*, 546 F.3d 456, 464-65 (7th Cir. 2008) (requiring that ALJ explain VE's deviation from DOT); *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (same). Accordingly, Lawrence's arguments as to the reliability of the VE's testimony lack support in the record and must be rejected.

For the foregoing reasons we **AFFIRM** the district court's judgment.