Justice SOTOMAYOR, dissenting.
The Court focuses on the propriety of a categorical rule that precludes private data that a vocational expert refuses to provide upon request from qualifying as " 'substantial evidence.' " See ante , at 1152. I agree with Justice GORSUCH that the question presented by this case encompasses an inquiry not just into the propriety of a categorical rule in such circumstances but also into whether the substantial-evidence standard was met in the narrower circumstances of Michael Biestek's case. See post , at 1161 - 1162 (dissenting opinion). For the reasons that Justice GORSUCH sets out, the vocational expert's conclusory testimony in this case, offered without even a hint of support, did not constitute substantial evidence.
Once Biestek established that he had impairments, the agency bore the burden of proving that work opportunities were available to someone with his disabilities and individual characteristics. 20 CFR § 416.912(b)(3) (2018). To meet that burden, the agency relied on a vocational expert's testimony that Biestek could qualify for one of 240,000 "bench assembler" jobs or 120,000 "sorter" jobs nationwide. Tr. 59 (July 21, 2015). The expert said that those numbers were based in part on her "professional experience." Id. , at 61. When Biestek's counsel understandably asked for more details, the expert said only that she got the numbers from a publicly available source as well as from her "own individual labor market surveys" that were part of confidential client files. Id. , at 71; see ibr.US_Case_Law.Schema.Case_Body:v1" id="p1158" href="#p1158" data-label="1158" data-citation-index="1" class="page-label">*1158id. , at 67, 71-72. Biestek's counsel asked if the names in the files could be redacted, but the administrative law judge (ALJ) interrupted and ruled that she would not require the surveys to be produced in redacted form. Id. , at 72; see also id ., at 67.
Perhaps the ALJ would have allowed Biestek's counsel to ask followup questions about the basis for the testimony at that point, and perhaps Biestek's counsel should have tried to do so. But a Social Security proceeding is "inquisitorial rather than adversarial." Sims v. Apfel , 530 U.S. 103, 110-111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) ; see 20 CFR §§ 404.900(b), 416.1400(b). The ALJ acts as "an examiner charged with developing the facts," Richardson v. Perales , 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and has a duty to "develop the arguments both for and against granting benefits," Sims , 530 U.S. at 111, 120 S.Ct. 2080 ; see also Social Security Ruling, SSR 00-4P, 65 Fed. Reg. 75760 (2000) (noting "the adjudicator's duty to fully develop the record"). Here, instead of taking steps to ensure that the claimant had a basis from which effective cross-examination could be made and thus the record could be developed, the ALJ cut off that process by intervening when Biestek's counsel asked about the possibility of redaction.
The result was that the expert offered no detail whatsoever on the basis for her testimony. She did not say whom she had surveyed, how many surveys she had conducted, or what information she had gathered, nor did she offer any other explanation of the data on which she relied. In conjunction with the failure to proffer the surveys themselves, the expert's conclusory testimony alone could not constitute substantial evidence to support the ALJ's factfinding.[1]
I agree with much of Justice GORSUCH's reasoning. I emphasize that I do not foreclose the possibility that a more developed record could justify an ALJ's reliance on vocational-expert testimony in some circumstances even if the expert does not produce records underlying that testimony on request. An expert may have legitimate reasons for not turning over data, such as the burden of gathering records or confidentiality concerns that redaction cannot address. In those circumstances, as the majority suggests, the agency may be able to support an expert's testimony in ways other than by providing underlying data, such as by offering a fulsome description of the data and methodology on which the expert relies. See ante , at 1162. The agency simply did not do so here.
Justice GORSUCH, with whom Justice GINSBURG joins, dissenting.
Walk for a moment in Michael Biestek's shoes. As part of your application for disability benefits, you've proven that you suffer from serious health problems and can't return to your old construction job. Like many cases, yours turns on whether a significant number of other jobs remain that someone of your age, education, and experience, and with your physical limitations, could perform. When it comes to that question, the Social Security Administration bears the burden of proof. To meet its burden in your case, the agency chooses to rest on the testimony of a vocational *1159 expert the agency hired as an independent contractor. The expert asserts there are 120,000 "sorter" and 240,000 "bench assembler" jobs nationwide that you could perform even with your disabilities.
Where did these numbers come from? The expert says she relied on data from the Bureau of Labor Statistics and her own private surveys. But it turns out the Bureau can't be the source; its numbers aren't that specific. The source-if there is a source-must be the expert's private surveys. So you ask to see them. The expert refuses-she says they're part of confidential client files. You reply by pointing out that any confidential client information can be redacted. But rather than ordering the data produced, the hearing examiner, herself a Social Security Administration employee, jumps in to say that won't be necessary. Even without the data, the examiner states in her decision on your disability claim, the expert's say-so warrants "great weight" and is more than enough evidence to deny your application. Case closed. App. to Pet. for Cert. 111a-112a, 118a-119a.
Would you say this decision was based on "substantial evidence"? Count me with Judge Easterbrook and the Seventh Circuit in thinking that an agency expert's bottom-line conclusion, supported only by a claim of readily available evidence that she refuses to produce on request, fails to satisfy the government's statutory burden of producing substantial evidence of available other work. See Donahue v. Barnhart , 279 F.3d 441, 446 (CA7 2002) ; McKinnie v. Barnhart , 368 F.3d 907, 910-911 (CA7 2004) (per curiam ).
Start with the legal standard. The Social Security Act of 1935 requires the agency to support its conclusions about the number of available jobs with "substantial evidence." 42 U.S.C. § 405(g). Congress borrowed that standard from civil litigation practice, where reviewing courts may overturn a jury verdict when the record lacks "substantial evidence"-that is, evidence sufficient to permit a reasonable jury to reach the verdict it did. Much the same standard governs summary judgment and directed verdict practice today. See 2 K. Hickman & R. Pierce, Administrative Law § 10.2.1, pp. 1082-1085 (6th ed. 2019); Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; NLRB v. Columbian Enameling & Stamping Co. , 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660 (1939).
Next, consider what we know about this standard. Witness testimony that's clearly wrong as a matter of fact cannot be substantial evidence. See Scott v. Harris , 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Falsified evidence isn't substantial evidence. See, e.g ., Firemen's and Policemen's Civil Serv. Comm'n v. Brinkmeyer , 662 S.W.2d 953, 956 (Tex. 1984). Speculation isn't substantial evidence. See, e.g. , Cao He Lin v. Department of Justice , 428 F.3d 391, 400 (CA2 2005) ; Alpo Petfoods, Inc. v. NLRB , 126 F.3d 246, 250 (CA4 1997). And, maybe most pointedly for our purposes, courts have held that a party or expert who supplies only conclusory assertions fails this standard too. See, e.g. , Lujan v. National Wildlife Federation , 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [summary-judgment practice] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); Regents of Univ. of Minn. v. AGA Medical Corp. , 717 F.3d 929, 941 (CA Fed. 2013) ("conclusory expert assertions cannot raise triable issues of material fact") (collecting cases); Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago , 877 F.2d 1333, 1339 (CA7 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial *1160 process"); Sea Robin Pipeline Co. v. FERC , 795 F.2d 182, 188 (CADC 1986) ("[I]nordinate faith in the conclusory assertions of an expert ... cannot satisfy the requirement [of] substantial evidence").
If clearly mistaken evidence, fake evidence, speculative evidence, and conclusory evidence aren't substantial evidence, the evidence here shouldn't be either. The case hinges on an expert who (a) claims to possess evidence on the dispositive legal question that can be found nowhere else in the record, but (b) offers only a conclusion about its contents, and (c) refuses to supply the evidence when requested without showing that it can't readily be made available. What reasonable factfinder would rely on evidence like that? It seems just the sort of conclusory evidence courts have long held insufficient to meet the substantial evidence standard. And thanks to its conclusory nature, for all anyone can tell it may have come out of a hat-and, thus, may wind up being clearly mistaken, fake, or speculative evidence too. Unsurprisingly given all this, the government fails to cite even a single authority blessing the sort of evidence here as substantial evidence, despite the standard's long history and widespread use.
Veteran Social Security practitioners must be feeling a sense of déjà vu . Half a century ago, Judge Henry Friendly encountered Kerner v. Flemming , 283 F.2d 916 (CA2 1960). There, the agency's hearing examiner offered "nothing save [his own] speculation" to support his holding that the claimant "could in fact obtain substantial gainful employment." Id. , at 921. The Second Circuit firmly explained that this kind of conclusory claim is insufficient to meet the substantial evidence standard. In response, the Social Security Administration began hiring vocational experts, like the one in this case, to document the number of jobs available to a given claimant. But if the government can do what it did in this case, it's hard to see what all the trouble was for. The agency might still rest decisions on a hunch-just so long as the hunch comes from an agency contractor rather than an agency examiner.
Instead of addressing the realities of this case, the government asks us to imagine a hypothetical one. Assume, it says, that no one had requested the underlying data. In those circumstances, the government points out, even Mr. Biestek appears to accept that the agency's decision could have stood. And if that's true, the government asks, why should it make a difference if we add only one additional fact-the expert's refusal to produce the data? See ante , at 1154 - 1156 (presenting the same argument).
The answer is an old and familiar one. The refusal to supply readily available evidentiary support for a conclusion strongly suggests that the conclusion is, well, unsupported. See, e.g. , Interstate Circuit, Inc. v. United States , 306 U.S. 208, 226, 59 S.Ct. 467, 83 L.Ed. 610 (1939) ("The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse"); Clifton v. United States , 4 How. 242, 248, 11 L.Ed. 957 (1846) (the withholding of "more direct" proof suggests that "if the more perfect exposition had been given it would have laid open deficiencies and objections which the more obscure and uncertain testimony was intended to conceal"); 31A C.J. S., Evidence § 156(2), p. 402 (1964) ("The unfavorable inference ... is especially applicable where the party withholding the evidence has had notice or has been ordered to produce it"). Meanwhile, a similar inference may not arise if no one's bothered to ask for the evidence, or if the evidence is shown to be unavailable for a good reason. In cases like those, there may be just too many other plausible *1161 and innocent excuses for the evidence's absence. Maybe, for example, nobody bothered to seek the underlying data because everyone knew what it would show.
Fine, the Court responds, all that's true enough. But even if we accept that an expert's failure to produce the evidence underlying her conclusion may support an inference that her conclusion is unsupported, that doesn't mean such an inference must follow. Whether an inference is appropriate depends on the facts of the particular case. See ante , at 1156 - 1157.
But what more do we need to know about the facts of this case? All of the relevant facts are undisputed, and it remains only to decide the legal question whether they meet the substantial evidence standard. We know that the expert offered a firm and exact conclusion about the number of available jobs. We know that the expert claimed to have private information to support her conclusion. We know Mr. Biestek requested that information and we have no reason to think any confidentiality concerns could not have been addressed. We know, too, that the hearing examiner had "no other reason to trust the expert['s]" numbers beyond her say-so. Ibid. Finally and looking to the law, we know that a witness's bare conclusion is regularly held insufficient to meet the substantial evidence threshold-and we know that the government hasn't cited a single case finding substantial evidence on so little. This is exactly the sort of case where an adverse inference should "tip the scales." Ibid.
With so much now weighing against the government, everything seems to turn on a final hypothetical. Now we are asked to imagine that the expert had offered detailed oral testimony about the withheld data. Her testimony was so detailed, we are asked to suppose, that Mr. Biestek could have thoroughly tested the data's reliability through cross-examination. (You might wonder just how effective this cross-examination could be if Mr. Biestek didn't have access to the data. But overlook that.) Surely in those circumstances it wouldn't matter whether the expert failed to produce the data even in bad faith. Any failure to produce would be harmless as a matter of law because the expert's testimony, all by itself, would amount to substantial evidence on which a rational factfinder might rely. Ante , at 1156 - 1157.
The problem is that this imaginary case has nothing to teach us about our real one. In Mr. Biestek's case, it is undisputed that the expert offered only a bare conclusion about the number of available jobs. No other relevant testimony was offered or received: no testimony about the underlying data, no testimony about its specific sources, no testimony about its reliability. In our real case, there is simply no way to shrug off the failure to produce the data as harmless error. To the contrary, and as we have seen, cases like this routinely fail to satisfy the substantial evidence standard. And if the government has a "duty to fully develop the record," ante , at 1158 (SOTOMAYOR, J., dissenting), that conclusion should follow all the more strongly.
What leads the Court to a different conclusion? It says that it views Mr. Biestek's petition as raising only the "categorical" question whether an expert's failure to produce underlying data always and in "every case" precludes her testimony from qualifying as substantial evidence. Ante , at 1152, 1156 - 1157. And once the question is ratcheted up to that level of abstraction, of course it is easy enough to shoot it down: just point to a series of hypothetical cases where the record contains additional justification for the expert's failure to produce or additional evidence to support her opinion. In such counterfactual cases, the failure to produce either would not be enough *1162 to give rise to an adverse inference under traditional legal principles or could be held harmless as a matter of law. See ante , at 1154 - 1157.
But as I understand Mr. Biestek's submission, it does not require an all-or-nothing approach that would cover "every case." As the Court acknowledges, Mr. Biestek has focused us "on the Seventh Circuit's categorical rule." Ante , at 1154, n. 1. And that "rule" targets the narrower "category" of circumstances we have here-where an expert " 'give[s] a bottom line,' " fails to provide evidence "underlying that bottom line" when challenged, and fails to show the evidence is unavailable. McKinnie , 368 F.3d at 911 (quoting Donahue , 279 F.3d at 446 ). What to do about that category falls well within the question presented: "[w]hether a vocational expert's testimony can constitute substantial evidence of 'other work' ... when the expert fails upon the applicant's request to provide the underlying data on which that testimony is premised." Pet. for Cert. i. The answer to that question may be "always," "never," or-as the Court itself seems to acknowledge-"[s]ometimes." Ante , at 1157. And if the answer is "sometimes," the critical question becomes "in what circumstances"?
I suppose we could stop short and leave everyone guessing. But another option is to follow the Seventh Circuit's lead, resolve the smaller yet still significant "category" of cases like the one before us, and in that way begin to offer lower courts meaningful guidance in this important area. While I would not hesitate to take this course and make plain that cases like Mr. Biestek's fail the substantial evidence standard, I understand the Court today to choose the first option and leave these matters for another day.
There is good news and bad news in this. If my understanding of the Court's opinion is correct, the good news is that the Court remains open to the possibility that in real-world cases like Mr. Biestek's, lower courts may-and even should-find the substantial evidence test unmet. The bad news is that we must wait to find out, leaving many people and courts in limbo in the meantime. Cases with facts like Mr. Biestek's appear to be all too common. See, e.g. , Dubin, Overcoming Gridlock: Campbell After a Quarter-Century and Bureaucratically Rational Gap-Filling in Mass Justice Adjudication in the Social Security Administration's Disability Programs, 62 Admin. L. Rev. 937, 966 (2010). And many courts have erred in them by finding the substantial evidence test met, as the Sixth Circuit did in the case now before us. Some courts have even conflated the substantial evidence standard-a substantive standard governing what's needed to sustain a judgment as a matter of law-with procedural rules governing the admission of evidence. These courts have mistakenly suggested that, because the Federal Rules of Evidence don't apply in Social Security proceedings, anything an expert says will suffice to meet the agency's burden of proof. See, e.g ., Welsh v. Commissioner of Social Security , 662 Fed. Appx. 105, 109-110 (CA3 2016) ; Bayliss v. Barnhart , 427 F.3d 1211, 1218, and n. 4 (CA9 2005). Definitively resolving this case would have provided more useful guidance for practitioners and lower courts that have struggled with a significant category of cases like Mr. Biestek's, all while affording him the relief the law promises in disputes like his.
The principle that the government must support its allegations with substantial evidence, not conclusions and secret evidence, guards against arbitrary executive decisionmaking. See Friendly, " Some Kind of Hearing," 123 U. Pa. L. Rev. 1267, 1313-1314 (1975). Without it, people like Mr. *1163 Biestek are left to the mercy of a bureaucrat's caprice. Over 100 years ago, in ICC v. Louisville & Nashville R. Co. , 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431 (1913), the government sought to justify an agency order binding private parties without producing the information on which the agency had relied. The government argued that its findings should be "presumed to have been supported." Id. , at 93, 33 S.Ct. 185. In essence, the government sought the right to "act upon any sort of secret evidence." Gellhorn, Official Notice in Administrative Adjudication, 20 Texas L. Rev. 131, 145 (1941). This Court did not approve of that practice then, and I would not have hesitated to make clear that we do not approve of it today.
I respectfully dissent.

I note that the agency's own handbook says that experts "should have available, at the hearing, any vocational resource materials that [they] are likely to rely upon and should be able to thoroughly explain what resource materials [they] used and how [they] arrived at [their] opinions." SSA, Vocational Expert Handbook 37 (Aug. 2017), https://www.ssa.gov / appeals / public_experts / Vocational_Experts_(VE)_Handbook-508.pdf (as last visited Mar. 29, 2019).