NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 29, 2008
Decided February 14, 2008

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-1342

| | |
|---|---|
| JAMES W. GLASS,<br>      *Plaintiff-Appellant*,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>      *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division<br><br>No. 05 C 136<br><br>Andrew P. Rodovich,<br>*Magistrate Judge*. |

**O R D E R**

James Glass appeals the denial of his application for Social Security Disability Insurance Benefits. He claims that the ALJ disregarded evidence of his difficulty adjusting to new work and thus, Glass argues, the ALJ erroneously concluded that he was not disabled within the meaning of the Social Security Act. Substantial evidence supports the ALJ's decision; therefore, we affirm.

## I. Background

At the time of his benefits hearing in May 2004, Glass was 59 years old. He

had a high school education and had worked for nearly thirty years at a steel mill in various positions, many of which were supervisory. In April 2001 Glass filed his first application for disability insurance benefits, alleging disability based on high blood pressure, "nerves," and anxiety, but an ALJ determined that he was not disabled.[1]

Before the district court ruled on his appeal, Glass filed a second application with the Social Security Administration in September 2002. In his second application, Glass again alleged disability due to high blood pressure, nerves, and anxiety. But at his benefits hearing in May 2004, Glass testified that anxiety and an inability to concentrate, not physical limitations, were the primary reasons that he could no longer work. Glass submitted the following reports: two from Dr. Savio Manatt, who diagnosed Glass with an enlarged prostrate, hypertension, nicotine addiction, decreased libido, anxiety, and depression; one from Dr. Sanker Jayachandran, a psychiatrist, who diagnosed him as having a major depressive disorder that markedly limited his concentration and social interaction; and a report from Dr. Alan Long, a clinical psychologist, who opined that Glass was in the early stages of partial remission for alcohol dependence and that he had a depressive disorder. In the report, Dr. Long noted that Glass "has trouble with customary work pressures" and "has had trouble adjusting to changes in his job description." But the doctor also assured that Glass "seems to have average ability to understand and carry out instructions." Two agency physicians, after reviewing Glass's record, also noted that he had affective and substance-addiction disorders, but concluded that these impairments did not render him disabled.

At the benefits hearing, the ALJ posed several questions to a vocational expert. Taking into account Glass's medically documented limitations, the ALJ hypothesized a person of advanced age with a high school education and an average ability to understand and perform simple work instructions, whose past work was skilled but who now needed unskilled labor with a flexible work schedule (no "line-driven performance expectations"). The ALJ asked the vocational expert whether such a person could work. The vocational expert opined that, due to his advanced age, this person would have "moderate to significant" difficulty adjusting from skilled to unskilled labor because the change would negatively affect his self-image. Explicitly asking the expert to put aside the question of low self-esteem resulting from a transition to unskilled work, the ALJ then asked the vocational expert whether the hypothetical person would have the capacity to perform any labor. The

---

[1] In denying benefits, the ALJ focused on Glass's alcoholism; at one point, Glass admitted to having drunk as many as forty-eight cans of beer per day. The ALJ concluded that many of his infirmities seemed to relate more to his alcohol dependence than psychosis.

vocational expert responded that the person could probably work as a stock material mover, machine feeder, or other jobs that require a medium level of exertion, and for which there are a significant number in the economy.

In his order denying benefits, the ALJ determined that Glass could perform "the full range of medium work, subject to moderate restrictions necessitating a flexible pace that would accommodate the need to avoid crowds and line-driven performance expectations and subject to an average ability to attend simple work instructions." The ALJ discounted the vocational expert's opinion that because of his age, Glass would have moderate to significant difficulty making a transition to unskilled labor. According to the ALJ, "unsubstantiated issues of self-esteem, self-confidence, and self-image are not relevant as nonexertional obstacles to competitive work." Relying on Glass's testimony, the medical reports, and his modified hypothetical question, the ALJ concluded that Glass was not disabled. Glass again sought review in the district court, but the court affirmed the ALJ's decision denying benefits.

## II.  Analysis

On appeal Glass claims, based on the testimony of Dr. Long (the psychologist) and the vocational expert, that he is unable to transition from the skilled labor that he formerly performed to unskilled work, and thus the ALJ should have awarded him disability benefits. To qualify for benefits, Glass must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This court defers to the ALJ's factual findings, and will affirm the ALJ's decision so long as it is supported by substantial evidence. *See Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).

According to Glass, Dr. Long suggested that he "cannot adjust to other work" and Glass faults the ALJ for "ignoring" this assessment. This court has noted that "where the testimony of medical experts is at issue, the ALJ is entitled to accept any part of an expert's testimony or reject it completely." *Bunge Corp. v. Carlisle*, 227 F.3d 934, 940 (7th Cir. 2000). Here Glass's contention that Dr. Long said he "cannot adjust" to work is simply not borne out by Long's report taken as a whole. In part of his report Dr. Long opined that Glass "has trouble with customary work pressures" and "has had trouble adjusting to changes in his job description." But elsewhere in the report he also described Glass as having an "average ability to understand and carry out instructions." Dr. Long's combined statements suggest that Glass may have some difficulty adjusting to unskilled labor, but that he

nonetheless can do so with average competence. Accordingly, substantial evidence from Dr. Long's report supports the ALJ's conclusion that Glass can transition to substantial gainful activity involving unskilled work.

Glass also contends that the ALJ impermissibly ignored the vocational expert's hypothetical opinion that Glass would be unable to adjust from skilled to unskilled work because of lost self-esteem. The ALJ did not err for two reasons. First, Glass overstates the vocational expert's testimony. She testified that Glass would have moderate to significant difficulty adjusting from skilled to unskilled labor because of a lowered self-image. But she then added that, despite these difficulties, he could be successfully reintegrated into the workforce. Second, in any event, the ALJ did not credit the portion of her testimony in which she asserted that Glass's transition to unskilled work would lower his self-confidence and make the adjustment difficult. The ALJ was permitted to do so, *see Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992), because that portion of her testimony amounted to a psychological assessment that was beyond the scope of her expertise. It was also inconsistent with Dr. Long's expert conclusion that Glass *could* follow job instructions with average competence.

Because the ALJ's conclusion is supported by substantial evidence, we AFFIRM the denial of benefits.